UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES
BANKRUPTCY COURT
FILED
2005 MAR 15 PM 5: 12
C.L. AUSTIN, CLERK
MILWAUKEE, WISCONSIN

In re
Erik R. Olsen, and
Patricia Olsen,
        Debtors.

Case No.: 04-34309-svk
Chapter 13

## MEMORANDUM DECISION

Erik and Patricia Olsen (the "Debtors") filed a chapter 13 petition on October 5, 2004. On October 8, 2004, prior to filing their bankruptcy schedules, they filed Motions to avoid the judicial liens of several judgment creditors. The Motions to avoid the liens were based on Bankruptcy Code § 522(f)(1)(a), which permits a debtor to avoid a judgment lien to the extent it impairs an exemption. Advanced Health Care, S.C. is the only creditor who objected to the proposed avoidance of its lien.

Although their Motion states that the Debtors have claimed certain property as exempt pursuant to the applicable homestead exemption, the Debtors did not file their schedule of exempt property until *after* Advanced Health Care objected to the Motion to avoid the judgment lien. At the hearing on the Objection, the Debtors alleged that the homestead exemption had been allowed and could not be challenged because no objection was timely filed to the exemption under Bankruptcy Code § 522(l) and Bankruptcy Rule 4003(b).[1] Courts are divided on whether an untimely objection can be raised in response to a Motion to avoid a lien on exempt property.

---

[1] Section 522(l) provides that the debtor shall file a list of exempt property, and "Unless a party in interest objects, the property claimed as exempt on such list is exempt." Rule 4003(b) states that an objection shall be filed within the later of 30 days after the conclusion of the § 341 meeting of creditors or any amendment to the list of exemptions.

*See, e.g., In re Schoonover*, 331 F.3d 575 (7th Cir. 2003); *Morgan v. FDIC (In re Morgan)*, 149 B.R. 147 (B.A.P. 9th Cir. 1993); *In re Chinosorn,* 248 B.R. 324 (N.D. Ill. 2000).

This court does not need to reach the issue, however, because Advanced Health Care objected to the lien avoidance Motion within the time frame for objecting to exemptions under Bankruptcy Rule 4003(b). Although the basis for the Objection was not stated in the pleading, at the initial hearing on the Motion to Avoid the lien (which was held within the exemption objection period under Rule 4003(b)), counsel for Advanced Health Care argued that a portion of the property did not qualify for the homestead exemption under Wisconsin law. Accordingly, Advanced Health Care's objection to the exemption was timely. If the property cannot be claimed as exempt, the Debtors cannot avoid the judgment lien as impairing an exemption under § 522(f)(1)(a). In short, the issue before the court is whether the exemption is proper.

The Motion recites that the Debtors own homestead real estate consisting of 10.5 acres of land containing a house and a pond. There was one tax identification number for the whole 10.5 acres, and the Debtors' children played on the entire parcel. Mr. Olsen testified that about a year before filing the petition, the Debtors subdivided the property in order to market it.[2] After the subdivision, the property consisted of two unimproved 1-acre parcels (lot 1 and lot 2) and a third parcel with the house, pond and 8.5 acres (lot 3). The Debtors offered the house and lot 3 for sale under two options: with the entire 8.5 acres or with 6.5 acres. In June or July 2004 (prior to the bankruptcy petition), the Debtors accepted an offer to purchase the house with 6.5 acres. The

---

[2] The subdivision was approved by the appropriate local governmental authorities January 12, 2004.

2

Case 04-34309-svk    Doc 45    Filed 03/15/05    Page 2 of 11

offer was contingent upon the buyers selling their own residence. The Debtors also received and accepted offers on lots 1 and 2, prior to the petition.

None of the sales closed until after the petition was filed. On October 26, 2004 (again, prior to the schedules being filed in this case), the Debtors filed and duly served Motions for approval of the sales. On November 23, 2004, the court approved the sales at a hearing, and on November 24, 2004, the Debtors closed on the sale of the house and 6.5 acres. The price was $435,000, which paid closing costs and almost all of the first mortgage. No equity was available for the Debtors. The Debtors have been renting a residence since the closing. The sales of lot 1 and lot 2 closed on December 28, 2004 and December 31, 2004, respectively. As a result, the first and second mortgages were satisfied, and $16,073.73 was paid to the IRS on a tax lien. Again, no equity was available for the Debtors.

Since the buyers chose the 6.5 acre alternative on lot 3, the Debtors have two acres remaining from the original parcel. This has been divided into 2 lots, valued at about $95,000 each, subject to a mortgage of approximately $220,000 and the balance of the IRS lien of about $10,000. Next in priority after the IRS is the Advanced Health Care judgment of $5,743.63, and then the State of Wisconsin Department of Revue tax lien of $19,650.79.[3] The two lots are for sale, but no offers had been received as of the date of the hearing on Advanced Health Care's

---

[3] The fact that there does not appear to be any equity in the lots for the Debtors or Advanced Health Care apparently does not concern the parties. Counsel for the Debtors stated he could have filed an adversary proceeding to avoid the judgment lien as unsecured by any value in the property, but chose the alternative strategy of avoiding the lien as impairing an exemption. The lack of equity does not prevent the avoidance of the lien under the formula set forth in Bankruptcy Code § 522(f)(2). According to 2 Norton Bankruptcy Law and Practice 2d § 46:23 (2004), "For example, if property worth $40,000 is encumbered by a $40,000 mortgage and junior judicial lien, the lien is avoidable in its entirety even though no value is actually available for the homestead exemption."

3

Case 04-34309-svk    Doc 45    Filed 03/15/05    Page 3 of 11

Objection. The Debtors claim that their homestead exemption includes these remaining lots; Advanced Health Care disagrees.

The Debtors have chosen the Wisconsin homestead exemption. Wis. Stat. § 815.20 provides: "An exempt homestead as defined in § 990.01(14) selected by a resident owner and occupied by him or her shall be exempt from execution . . . to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided." Section 990.01(14) defines an "exempt homestead" as the dwelling "and so much of the land surrounding it as is reasonably necessary for its use as a home, but not less than 0.25 acre, if available, and not exceeding 40 acres . . ." The ultimate question for the court is whether the remaining lots, which were once contiguous to the dwelling, but now have been severed from it, are reasonably necessary for the Debtors' use as a home.

In support of their position that the lots fall within the definition of an exempt homestead, the Debtors cite *In re Burgus*, 166 B.R. 126 (W.D. Wis. 1991). The debtor in *Burgus* claimed an entire 25-acre parcel as exempt, even though his house and other improvements were all located on a one-acre portion of the parcel. The debtor was using the balance of the acreage for various purposes such as harvesting firewood, pasturing livestock and growing oats and hay. Although portions of the property had different uses, there was no evidence in *Burgus* that the debtor had subdivided the property, nor that any or all of it was for sale. A creditor objected to the exemption, trying to limit the debtor's homestead to the house and one acre. The objection failed, because the 25-acre parcel did not exceed the statutorily prescribed limitations on size (less than 40 acres) and value (less than $40,000), and because the creditor failed to "set forth any information which permits a finding that it is unreasonable to consider a twenty-five acre

4

parcel as 'reasonably necessary for its use as a home.'" *Burgus*, 166 B.R. at 129. Here, Advanced Health Care has argued that the two one-acre lots are not reasonably necessary for the use as a home, because the Debtors severed the lots from the residence as part of the sale.

The Debtors also rely on the presumption that contiguous land surrounding a residence is considered reasonably necessary, as long as the amount of land does not exceed the statutory 40-acre limitation. This presumption was first articulated in *In re Mann*, 82 B.R. 981, 984 (Bankr. W.D. Wis. 1986). In *Mann*, the debtors sought to exempt two adjacent parcels of land as their homestead. One parcel contained the house, and the other a pole shed that had been used in the debtors' failed construction business. At the time of their bankruptcy, the debtors were using the pole shed as a home workshop and to store tools. A creditor objected to the exemption of the property with the pole shed, arguing that the property was not reasonably necessary for the debtors' use as a home. The court overruled the creditor's objection. Construing the exemptions liberally in the debtors' favor, as is required by the strong public policy to protect the homestead exemption, and concluding that the legislature's 40-acre limitation is a "legislatively prescribed perimeter of reasonableness," the *Mann* court held:

> Property which otherwise can be classified as homestead property should presumptively be considered 'reasonably necessary for the use of the dwelling as a home,' as long as it does not exceed such prescribed limits. This presumption can only be rebutted by a specific showing of unreasonableness.

82 B.R. at 984. The court did not cite any authority for this presumption.

Exemptions in Wisconsin are grounded in the state constitution, which provides in Article I, section 17: "The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale

5

for the payment of any debt or liability hereafter contracted." The homestead exemption has been part of the Wisconsin Statutes since 1848; the first exemption law was enacted at the first session of the legislature after the adoption of the Wisconsin Constitution. *Binzel v. Grogan*, 67 Wis. 147, 29 N.W. 895, 898-99 (1886). For the first hundred years, the amount of land which could be exempted depended upon the location of the property in the country or city. For example, the statute construed in *Binzel* defined an exempt homestead as "consisting, when not included in any city or village, of any quantity of land not exceeding forty acres, used for agricultural purposes, and when included in any city or village, of any quantity of land not exceeding one-fourth of an acre, and the dwelling-house thereon and its appurtenances. . ." *Id.* at 897.

The dichotomy remained until 1949, when the definition of homestead was changed. The legislative history of the 1949 amendments includes two letters to then State Senator Warren P. Knowles, the author of the amendments. The first letter is from a St. Croix County Judge who addressed a concern about the size limitation on urban homesteads :

> The situation often arises where a person may own two or three lots in a city or village which are all contiguous and which are all used together and upon which the dwelling house is located. Very often where there are two or more lots the area may exceed one-fourth of an acre, and in that case it is extemely (sic) difficult to know what to do in assigning the homestead in the final decree in the estate of the deceased owner. It would seem to me that it would be practical to make some provision whereby the whole tract might be considered as homestead. Obviously if there are separate lots which do not join onto the parcel on which the home is located that should not be included.

Drafting Records of L. 1949 c. 245.

Senator Knowles contacted Madison attorney Byron H. Stebbins, who wrote in reply:

> In any event with any limitation of value, it does not seem to me that the quarter acre limitation is of much importance, and I find that the laws of some states

6

> contain no acreage limitation. For example, the Washington law contains no limitation, although the court held in *John Hancock Mutual Life Ins. Co. v. Wagner,* 24 Pac.(2d) 420, that it would construe the law as exempting only the dwelling and so much of the land surrounding it as is reasonably necessary for the use of the dwelling as a home. Very possibly some such language could be substituted for the quarter acre limitation in our statute.

*Id.*

Chapter 245 of the Laws of 1949 indeed adopted the "reasonably necessary for use of the dwelling as a home" standard from the *John Hancock* case from Washington state. The statute as amended reads identically to today's section 990.01(13): "The word 'homestead' means the dwelling and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, but not less than one-fourth acre (if available) and not exceeding 40 acres." Wis. Stats. § 370.15(46)(a) (1949). The 1949 amendments removed the agricultural component of the 40-acre requirement, but added that the land must be reasonably necessary for the use of the dwelling as a home.

Although many Wisconsin decisions construed the exemption statute prior to the 1949 amendments, only a handful of cases have been decided since. In *Farm Credit Bank of St. Paul v. Gibson*, a debtor who lived on a 106-acre farm was limited to his dwelling house and one acre of land. 155 Wis. 2d 325, 327, 455 N.W.2d 674 (Wis. Ct. App. 1990). The debtor argued that he should be able to exempt the full statutory 40 acres to use as farmland, but the court of appeals stated that the issue was whether the property was reasonably necessary for the use of the dwelling as a home. Even though construing the statute in the debtor's favor, the *Gibson* court upheld the one-acre exemption, finding that was all that was reasonably necessary. 155 Wis. 2d at 330.

7

In *In re Lloyd*, the debtor's estate included 113 acres of agricultural land and wetlands in Fond du Lac County, Wisconsin. 37 F.3d 271, 272-273 (7th Cir.1994). The bankruptcy court determined that Lloyd was entitled to a homestead exemption of three acres, despite the absence of a permanent residential structure on the land. In determining the appropriate amount of land for Lloyd's homestead exemption, the court found that Lloyd was not a farmer and that three acres was a reasonable amount upon which she could live and keep her two horses. The decision was affirmed on appeal by the Seventh Circuit Court of Appeals. *Id.* at 272.

The bankruptcy court's decision in *Burgus* cites *Schwanz v. Teper*, 66 Wis. 2d 157, 223 N.W.2d 896 (Wis. 1974), but that case did not involve the amount of land that was reasonably necessary for the use of the debtor's dwelling as a home. *In re Burgus*, 166 B.R. 121, 123 (Bankr. W.D. Wis. 1990). Rather, *Schwanz* examined the exemption of rental income from the debtor's duplex. Answering a question of first impression, the Wisconsin Supreme Court held that rental income from the dwelling could be included in the exemption, as long as the underlying property retained its character as a homestead rather than a business. *Schwanz*, 66 Wis. 2d at 165. The remaining cases cited in *Burgus* pre-date the 1949 amendments to the exemption statute, and do not consider the amount of land necessary for the debtor's use of a dwelling as a home. 166 B.R. at 124 n.3.

Other than *Gibson*, this court's research did not unearth any Wisconsin state court cases construing the "reasonably necessary" component of the homestead exemption, added by the 1949 amendments. *Gibson* follows a "plain meaning" reading of the statute, which is, of course, favored by the Supreme Court. *E.g., United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). Although exemption statutes are to be construed liberally in the debtor's favor, the court

should not read words into, or in this case, out of, the statute. *Schwanz*, 66 Wis. 2d at 164 ("While it is true that the homestead exemption statute is to be liberally construed, the principles of liberal construction cannot be employed to write exemptions into the statutes."). To adopt a presumption that all contiguous land up to 40 acres is covered by the homestead exemption, effectively deletes from the statute the requirement that the land be reasonably necessary for the use of the dwelling as a home. Presumably, had the legislature simply intended to increase the available acreage to 40 acres for urban as well as country debtors, the "reasonably necessary" language would not have been included in the statute. Considering the plain meaning of the Wisconsin homestead exemption, and in the absence of a Wisconsin state court interpretation to the contrary, this court declines to adopt the presumption that all contiguous land up to 40 acres is reasonably necessary for the use of the dwelling as a home.

Without the benefit of such a presumption, the Debtors here do not succeed on their claim of exemption. By offering to sell their dwelling with 6.5 acres, and then accepting an offer to purchase the property with that acreage, the Debtors conceded that the remaining 2 acres were not reasonably necessary for the use of their home as a dwelling. Any other result does not reflect the reality of the accepted offer that the Debtors had in hand on the day they filed their bankruptcy petition.

The Debtors may point out that as of the date of the petition, the sale had not closed, and the Debtors still owned the house and the entire 8.5 acres. On the petition date, the contingency in the offer to purchase had not been satisfied, and the buyers still needed to sell their own house. If that contingency had not been met, the Debtors might have sold the property with the full 8.5 acres, suggesting that the two acres were necessary for the use of the dwelling as a home.

9

Alternatively, the Debtors could have tried to reject the purchase contract under Section 365 of the Bankruptcy Code, to sell the house with the 8.5 acres. In fact, the contingency was met, the sale closed, and as of the date of the hearing on the Debtors' Motion to avoid the lien only the two acres remained, while the house and 6.5 acres had been sold.

While it is generally true that the date of the petition is a "snapshot," for the determination of the law and the facts with respect to exemptions, it is equally important that consideration must be given to the entire statutory scheme applicable on the filing date. *In re Zibman*, 268 F.3d 298, 304 (5th Cir. 2001). In *Zibman*, the bankruptcy court "froze" the exemption on the petition date, and ruled that proceeds of the debtor's homestead were exempt, even though the debtor had not purchased a new homestead within the 6-month limitation period provided by Texas law. The Court of Appeals reversed, reasoning that the entire state law applicable on the date of the petition must be considered, and that by allowing the snapshot approach to eliminate the 6-month limitation period, the bankruptcy court impermissibly fragmented the state law and granted a benefit to the debtors that they would not have received outside of bankruptcy. *Id.* Similarly in this case, ignoring the fact that the Debtors had accepted an offer to purchase the house and 6.5 acres because the closing had not occurred as of the petition date, effectively reads out of the Wisconsin exemption statute the requirement that all of the land claimed exempt must be reasonably necessary for the use of the dwelling as a home. If the Debtors had not filed bankruptcy, they would not have be allowed to freeze the exemptions between the acceptance of the offer and the sale.

The snapshot on the petition date here includes the Debtors' accepted offer to purchase the home without the 2 acres. While the Debtors may have been able to reject this contingent

contract when they filed bankruptcy, they did not do so, and the sale closed within about 45 days of the bankruptcy petition. Under these circumstances, the two acres that were not included in the sale of the lot with the home were not reasonably necessary for the use of the Debtors' dwelling as a home, and cannot be claimed as exempt under Wisconsin's homestead exemption statute. Since the property is not exempt, the Debtors cannot use Bankruptcy Code § 522(f) to avoid the judgment lien of Advanced Health Care on the remaining two acres. A separate order will be issued denying the Debtors' Motion to avoid the lien.

Dated: March 10, 2005

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge